UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NIBRAS A.,

                              Plaintiff,                          **DECISION**
                                                                          **and**
                    v.                                              **ORDER**

FRANK BISIGNANO,[1] Commissioner of                **24-CV-114-LGF**
  Social Security,                                                   (**consent**)

                              Defendant.
_____

APPEARANCES:        LEWIS L. SCHWARTZ, PLLC
                              Attorneys for Plaintiff
                              LEWIS L. SCHWARTZ, of Counsel
                              1231 Delaware Avenue
                              Suite 103
                              Buffalo, New York  14209

                              MICHAEL DiGIACOMO
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                              and
                              CANDANCE MARIE BROWN CASEY
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              6401 Security Boulevard
                              Baltimore, Maryland  21235

## <u>JURISDICTION</u>

On October 2, 2025, the parties to this action consented pursuant to 28 U.S.C.

_____

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on July 1, 2024 (Dkt. 4), and by Defendant on July 30, 2024 (Dkt. 6).

## **BACKGROUND**

Plaintiff Nibras A. ("Plaintiff"), brings this action under Titles II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on November 10, 2020, for Supplemental Security Income under Title XVI of the Act ("SSI" or "disability benefits").  AR[2] at 209-10.  Plaintiff alleges she became disabled on August 26, 2019, based on difficulty breathing, mental health, back pain, and headaches.  AR at 217, 221.  Plaintiff's application initially was denied on May 10, 2021, AR at 81, 105-11, and upon reconsideration on December 30, 2021.  AR at 104, 117-28.

Plaintiff timely filed a request for an administrative hearing ("hearing"), AR at 129, which was granted with the hearing to be held before Administrative Law Judge ("ALJ") William M. Weir ("the ALJ").  AR at 168-196.  By letter to the ALJ dates November 3, 2022, Nicole Blackwell ("Blackwell"), lead paralegal with Mental Health Advocates of WNY ("MHA"), advised of medical evidence that was outstanding and requested that in the event the records were not submitted before the hearing, that the ALJ refrain from issuing a hearing decision until the records were provided.  AR at 332.  As scheduled,

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on April 1, 2024 (Dkt. 3).

the hearing was held on November 10, 2022 before ALJ Weir in Buffalo, New York.  AR
at 38-64.  Appearing and testifying at the hearing were Plaintiff, represented by
Blackwell, impartial vocational expert ("VE") Christine Ditrinco, and "Sabeen," an Arabic
interpreter (the "interpreter").[3]  During the hearing, Blackwell advised that the
outstanding medical records were obtained and either determined to be irrelevant and
not submitted, or relevant and submitted to the ALJ who acknowledged their receipt,
adding that the records would be "exhibited," *i.e.*, added as medical records in the AR.
On March 3, 2023, the ALJ issued a decision denying Plaintiff's claims, AR at 7-30
("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 206-
08.  On January 22, 2024, the Appeals Council denied Plaintiff's request to review the
ALJ's decision, rendering it the Commissioner's final decision.  AR at 1-6.  On February
1, 2024, Plaintiff commenced this action seeking review of the ALJ's decision denying
Plaintiff disability benefits.

On July 1, 2024, Plaintiff moved for judgment on the pleadings (Dkt. 4)
("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion
for Judgment on the Pleadings (Dkt. 4-1) ("Plaintiff's Memorandum"), and an appendix
of additional medical records (Dkt. 4-2) ("Appendix").  On July 30, 2024, Defendant
moved for judgment on the pleadings (Dkt. 6) ("Defendant's Motion"), attaching the
Commissioner's Memorandum in Support of His Motion for Judgment on the Pleadings
and in Response to Plaintiff's Brief, Pursuant to Local Rule 5.5 (Dkt. 6-1) ("Defendant's
Memorandum").  Filed on August 20, 2024, was Plaintiff's Reply (Dkt. 7) ("Plaintiff's
Reply").  Oral argument was deemed unnecessary.

---

[3] Sabeen's last name is not in the record.  Plaintiff does not speak English, but only Arabic.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[4]

Plaintiff Nibras A. ("Plaintiff"), born August 16, 1975, immigrated from Iraq to the United States in 2016.  AR at 217, 517.  Plaintiff does not speak, write, nor understand English, but completed college in Iraq, majoring in Arabic.  AR 220, 222, 517.  Plaintiff lived in an apartment with her husband and four of her six children.  AR at 241, 573.  Plaintiff was 44 years old as of her alleged disability onset date ("DOD") of August 26, 2019, and 47 years old as of March 3, 2023, the date of the ALJ's Decision.  AR at 10, 24.  Plaintiff does not drive and does not have a driver's license, but depends on her husband to drive her places or uses public transportation.  AR 244, 573.  Plaintiff does not need any help with self-care or grooming, prepares meal for her family, grocery shops and does laundry with assistance, watches television, listens to music, participates in social media, talks on the phone, video chats with her mother, and takes care of her minor children, AR 242-45, 575, but does not socialize with anyone outside of her family.  AR at 245, 575.  Plaintiff's past work includes as an aide in a day care, and working in a school cafeteria, but Plaintiff has not worked since August 26, 2019. AR at 221-22.

Plaintiff, who is morbidly obese, has been medically treated for asthma, lumbar spondylosis, obstructive sleep apnea ("OSA"), headaches, an anxiety disorder, and a depressive disorder.  Plaintiff attributes her mental health impairments to being raised in

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings, specifically, Plaintiff's argument that the ALJ erred by failing to consider Plaintiff's obstructive sleep apnea and accompanying headaches and memory loss as severe impairments.

war-torn Iraq where she witnessed much death and violence and her mother gave her valium to help Plaintiff sleep despite fear of the bombs that exploded near their house. AR at 376, 380.

On April 23, 2019, Plaintiff established mental health treatment at Linwood Community Services ("Linwood"), were she saw Licensed Master Social Worker ("LMSW") Alexander Rubin ("Counselor Rubin"), Mental Health Counselor Kimberly Rave ("Counselor Rave"), and Nurse Practitioner ("NP") Dina Fisher ("NP Fisher"). AR at 388-483.

On November 9, 2020, Plaintiff established treatment at Pulmonary Group of WNY ("Pulmonary Group") with pulmonologist Hartwig Boepple, M.D. ("Dr. Boepple") for complaints of shortness of breath. AR at 353-55.

On January 11, 2021, Physician's Assistant ("PA") Lisa Porter ("PA Porter") with UBMD Family Medicine at BestSelf Behavioral Health, UBMD Physicians Group ("UBMD"), completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination for New York State Department of Social Services Office of Temporary and Disability Assistance ("NYS DSS"), checking boxes indicating there was no evidence of limitations to Plaintiff's mental functioning. AR at 871-72.

On March 21, 2022, Plaintiff established treatment at Dent Neurologic Institute ("Dent"), with neurologist Rick Magun, M.D. ("Dr. Magun") for a medical-interpretation of a long history of memory difficulties, anxiety, and difficulty concentrating and insomnia. AR at 608. Plaintiff was also treated at Dent by chronic pain management specialist

Ashraf Henry, M.D. ("Dr. Henry"), *id*. at 899-902, and PA Megan Case ("PA Case").  *Id*. at 798-800.

On October 13, 2022, Plaintiff sought to establish care at Neighborhood Health Center ("NHC") where she was examined by PA Lisa Scholl ("PA Scholl") who reported Plaintiff complained of headaches.  AR at 783-88.

In connection with her disability benefits application, on April 21, 2021, Plaintiff underwent an internal medicine examination by consultative physician Hongbiao Liu, M.D. ("Dr. Liu") who also reviewed an X-ray of Plaintiff's lumbosacral spine.  AR at 517-21.  Dr. Liu diagnosed Plaintiff with degenerative joint disease, gall stones, history of chronic whole-body pain, history of anxiety and depression, history of gastroesophageal reflux disease ("GERD"), history of asthma, and morbid obesity, assessed Plaintiff's prognosis  as stable, and found Plaintiff could work with mild to moderate limitations "for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing," and that Plaintiff "should avoid dust and other irritating factors due to asthma condition."  AR at 520-21.  On that same date, Plaintiff underwent a psychiatric evaluation by consultative psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), who diagnosed major depressive disorder, recurrent episodes, moderate, and unspecified anxiety disorder, and stated that based on the mental status examination, Plaintiff's only mental work limitations included mild impairment "demonstrated in regulating emotion, controlling behavior, and maintaining well-being," that such "[d]ifficulties are caused by stressors," but that Plaintiff's mental impairment "does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  *Id*. at 522-25.  On December 1, 2021, Plaintiff

underwent a second consultative psychiatric evaluation by Dr. Santarpia.  AR at 573-76.

Upon examination, Plaintiff's mental status and Dr. Santarpia's medical source

statement were essentially unchanged from the earlier psychiatric examination, AR at

575, with Dr. Santarpia again diagnosing Plaintiff with major depressive disorder,

recurrent episodes, and unspecified anxiety disorder.  *Id*. at 576.

On May 10, 2021, Plaintiff's medical records were reviewed by State agency

medical consultants J. Lawrence, M.D. ("Dr. Lawrence"), in connection with the SSA's

initial review of Plaintiff's disability benefits application, AR at 65-80, and on December

7, 2021, by J. May, Ph.D. ("Dr. May"), upon reconsideration of the initial denial of the

application.  AR at 82-103.  Based on their separate reviews of the medical evidence,

both Drs. Lawrence and May found Plaintiff's severe impairments included disorders of

the skeletal spine and asthma, but Plaintiff's trauma and stressor-related disorders,

depressive, bipolar and related disorders, and anxiety and obsessive-compulsive

disorders were not severe.  *Id*. at 70-73, 91-93.  Both Drs. Lawrence and May also

concurred that Plaintiff, despite her impairments, retained the "residual functional

capacity" or "RFC" for light work with some additional limitations including occasional

postural limitations.  AR at 74-77, 96-101.

## DISCUSSION

## 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Act as for SSI benefits under Title XVI of the Act.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations

posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found that Plaintiff has not engaged in substantial gainful activity ("SGA") since November 10, 2020, the application date.  AR at 12.  The ALJ found Plaintiff suffers from the severe impairments of obesity, asthma, lumbar spondylosis, an anxiety disorder, and a depressive disorder, *id*., but that other medically determinable impairments, including OSA, daily headaches, and hypertension, did not significantly limit Plaintiff's physical or mental ability to do basic work activities and thus are not severe, *id*. at 12-13.  The ALJ further found that Plaintiff does not have an

impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 13-15. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with additional limitations including the opportunity to change position between sitting, standing, or walking every two hours for 10 minute periods, no use of ladders, ropes, or scaffolds, can incidentally (defined as up to 5% of the time) kneel, crouch, and crawl, can perform simple and repetitive tasks involving one and two steps, cannot perform complex work (defined as work involving multiple simultaneous goals or objectives, or the need to independently set quality and quantity standards, and Plaintiff must avoid concentrated exposure to pulmonary irritants. *Id*. at 15-23.  Although Plaintiff has no past relevant work, the ALJ found that Plaintiff, based on her age, high school education, work experience, and RFC, could perform work existing in significant numbers in the national economy including as a table worker and a bench hand. *Id*. at 23-24.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since November 10, 2020, when Plaintiff filed her application. *Id*. at 24.

## 3.    Analysis of Plaintiff's Arguments

In support of her motion, Plaintiff submitted an appendix of additional medical records pertaining to Plaintiff's neurological treatment at Dent and which Plaintiff maintains are relevant to this action (Dkt. 4-2) ("Appendix"), argues the Commissioner committed legal error by failing to consider Plaintiff's OSA and the accompanying headaches and memory loss as severe impairments, and urges the undersigned to remand the matter with instructions that the ALJ find Plaintiff's OSA a severe

impairment and for consideration of how Plaintiff's symptoms of memory loss and headaches affect her ability to work.[6]  Plaintiff's Memorandum at 9-13.  Defendant opposes the belated introduction of new evidence, *i.e.*, the Appendix, arguing Plaintiff has not satisfied the applicable test for whether belatedly submitted medical records can support a remand for further proceedings as Plaintiff requests, Defendant's Memorandum at 6-9, substantial evidence in the record supports the ALJ's determination at step 2 of the five-step sequential analysis that Plaintiff's OSA, headaches, and memory loss are not severe impairments, *id*. at 9-17, and in any event, because the ALJ's analysis proceeded beyond step 2 and included consideration of all symptoms of Plaintiff's impairments, both severe and non-severe, in formulating Plaintiff's RFC, any error was harmless.  *Id*. at 17-20.  In reply, Plaintiff argues that Plaintiff's inability to communicate in English posed challenges to Plaintiff's counsel's ability to obtain all of Plaintiff's treatment records, all of which relate to the period prior to the ALJ's decision and establish Plaintiff continued to experience memory loss and headaches attributed to her OSA, and that upon first learning on February 6, 2024, of Plaintiff's ongoing treatment at Dent, Plaintiff's counsel immediately requested the records from Dent, but did not receive them until June 4, 2024.  Defendant's Reply ¶¶ 11-15.  There is no merit to Plaintiff's arguments.

Insofar as Plaintiff maintains the ALJ erred at step 2 of the sequential analysis by failing to consider Plaintiff's OSA, chronic headaches, and memory loss to be severe impairments, Plaintiff's Memorandum at 9-13, the Second Circuit considers such errors

---

[6] Because Plaintiff's challenge to the ALJ's Decision is limited to the ALJ's failure to consider Plaintiff's OSA, headaches, and memory loss severe, the court's consideration of the ALJ's decision likewise is limited to the impact of these asserted impairments on Plaintiff's ability to perform basic work activities and substantial gainful activity.

harmless provided the ALJ proceeds with the subsequent steps of the analysis during which the effects of the subject non-severe impairments are clearly considered. *See Stanton v. Astrue*, 370 Fed.Appx. 231, 233 n. 1 (2d Cir. 2010) (noting the ALJ's decision, including consideration of the combination of the plaintiff's severe and non-severe impairments and the combined effects of all symptoms in formulating the RFC, rendered harmless any error by the ALJ in failing to consider the plaintiff's neuropathy a severe impairment); *Brenda D. v. Comm'r of Soc. Sec.*, 2021 WL 1856905, at * 4 (W.D.N.Y. May 10, 2021) (citing *Reices-Colon v. Astrue*, 523 Fed.Appx. 796, 798 (2d Cir. 2013) (because the ALJ specifically considered the plaintiff's anxiety and panic attacks during the subsequent steps of the sequential analysis, any error at step 2 in failing to find such impairments were non-severe was harmless)).

Plaintiff listed headaches among her claimed disabling conditions in filing for disability benefits, but did not include memory loss or any other memory impairment as a disability condition. AR at 217, 221. Plaintiff, however, argues that her "memory loss and headaches . . . are symptoms from her obstructive sleep apnea." Plaintiff's Memorandum at 13. Regardless of whether Plaintiff's claimed headaches and memory loss are separate impairments or symptoms of her OSA, the ALJ specifically stated that "[d]espite finding some of the claimant's alleged impairments to be non-severe, I will take into account all allegations of *symptoms* arising from both severe and non-severe impairments in determining the claimant's [RFC]." AR at 13 (italics added). *See also* AR at 21 (ALJ repeating the RFC formulation was based on consideration of Plaintiff's "spinal impairment, obesity, and asthma and in contemplation of her other non-severe impairments," and the fact that the AR "shows significant improvement with treatment"

of Plaintiff's mental impairments).  A thorough reading of the ALJ's Decision bears this out.

The ALJ discussed that treatment for Plaintiff's OSA included night use of an APAP machine,[7] and that Plaintiff continued to improve with its use.  AR at 12 (citing AR at 597 (Dr. Boepple assessing Plaintiff on October 18, 2021 as "doing well on APAP").  Dr. Santarpia's December 1, 2021 consultative psychiatric evaluation of Plaintiff showed unremarkable findings with regard to attention and concentration, recent and remote memory, and cognition.  AR at 19 (referencing AR at 575).  PA Porter's examination of Plaintiff on March 31, 2022, was unremarkable with regard to Plaintiff's orientation, speech, language, attention span, concentration, memory and fund of knowledge.  AR at 19-20 (referencing AR at 609-10). The ALJ considered that at Plaintiff's August 24, 2022 examination at Dent, Dr. Magun reported Plaintiff was tolerating Topiramate well and that the medication was beneficial to Plaintiff's daily headaches, AR at 13 (referencing AR at 794), and that on October 17, 2022, Dr. Henry reported a CT scan of Plaintiff's brain was unremarkable.  *Id*. (referencing AR at 900).  According to a December 22, 2020 Individual Progress Note prepared by NP Fisher, both Plaintiff's short-term and long-term memories were intact, and her "attention and concentration" were reported as "non distractable/attentive."  AR at 19 (referencing AR at 482).

Relevantly, "an ALJ is not required to discuss every piece of evidence submitted," and "failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (citation and quotation marks omitted).

---

[7] "CPAP therapy" involves use of a machine with a mask and tube to deliver constant air pressure to keep air passages open during sleep.  An "APAP machine" is similar to a CPAP machine but delivers "auto-adjusting" pressure.

Here, other evidence in the record supports the ALJ's decision that Plaintiff's OSA,
including symptoms of Plaintiff's headaches and memory loss, were not disabling.

On December 12, 2019, Plaintiff complained to NP Fisher of a headache, but
Plaintiff was oriented in all spheres, *i.e.*, person, place, time, and situation, recent and
remote memory were intact, and Plaintiff was not distractable but attentive.  AR at 473.
On November 9, 2020, Dr. Boepple diagnosed Plaintiff with OSA for which diagnostic
imaging was prescribed, AR at 354, which confirmed the diagnosis on December 28,
2020, *id*. at 350-51, and CPAP therapy was recommended.  AR at 514.  On February 4,
2021, Plaintiff reported to Counselor Rave at Linwood that she obtained a new
breathing machine.  AR at 446. On March 1, 2021, Dr. Boepple reported Plaintiff was
"improved" with CPAP, but had difficulty tolerating it.  AR at 514-15.  On April 5, 2021,
Plaintiff was "doing well" on an APAP machine.  *Id*. at 511-12.

On August 29, 2021, Plaintiff was seen by PA Porter in follow-up at UBMD.  AR
at 662-63.  PA Porter referred Plaintiff to a neurologist for Plaintiff's reported memory
loss and confusion at times.  AR at 662-63.  On October 18, 2021, Dr. Boeppel reported
Plaintiff was using her APAP machine "nightly with benefit."  AR at 596, 597.

On March 21, 2022, upon PA Porter's referral, Plaintiff established treatment at
Dent.  AR at 608.  Upon examining Plaintiff on March 21, 2022, Dr. Magun assessed
chronic daily headaches, morbid obesity, body mass index ("BMI") between 60.0 and
69.9, anxiety, and memory loss.  AR at 610.  Dr. Magun prescribed Topiramate
(migraine headache medication) for relief of daily headaches and to help with
concentration, and laboratory blood tests for vitamins D and B12 levels as well as
methylmalonic acid levels for memory complaints.  *Id*. at 610-11.  On April 19, 2022, Dr.

Boepple reported Plaintiff continued to do well with nightly use of the APAP machine. AR at 778-79.

On June 10, 2022, Plaintiff followed up at Dent with PA Case and reported improved headache symptoms while on Topiramate with decreased headaches and occasional memory loss. *Id*. at 798-99. PA Case increased the Topiramate dosage, reminded Plaintiff to complete the prescribed blood tests, and recommended weight loss. *Id*. at 799. On August 24, 2022, Plaintiff was seen at Dent by Dr. Magun and reported fewer and less severe headaches, some weight loss which was considered helpful for Plaintiff's OSA, and complaints of occasional memory loss. AR at 794. Plaintiff's still had not completed the prescribed blood tests, *id*. at 794. After examining Plaintiff, Dr. Magun diagnosed memory loss secondary to OSA and chronic daily headaches and increased the Topiramate dosage. *Id*. at 796.

On September 19, 2022, Plaintiff presented to the emergency department at Buffalo General Hospital with complaints of headache and dizziness. AR at 882-98. Plaintiff reported that for the past week, upon awakening in the morning, she experienced a sensation that the room was spinning, but the sensation went away during the day, and that the dizziness occurred upon standing up quickly. *Id*. at 882. Upon examination, Plaintiff was asymptomatic, not dizzy, neurologically intact and not ataxic (lack of voluntary muscle coordination causing clumsy, unsteady movements and balance issues). *Id*. at 884. A CT scan of Plaintiff's head was negative. *Id*. at 884, 891. Plaintiff was diagnosed with dizziness, vertigo, and anemia, and Plaintiff was advised to take Tylenol as needed. *Id*. at 884, 886.

Accordingly, the ALJ's determination that Plaintiff's OSA, accompanied by chronic headaches and complaints of memory loss, were not sufficiently severe to interfere with Plaintiff's ability to perform work related activities is supported by other evidence in the record.

Nor do the additional medical records Plaintiff belatedly submitted as the Appendix require remand.  As Defendant argues, Defendant's Memorandum at 6-7,  the type of remand Plaintiff seeks, *i.e.*, a remand pursuant to sentence six of 42 U.S.C. § 405(g) ordering the Commissioner to take additional evidence, requires "a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) ("sentence six remand").  Defendant further argues Plaintiff has not met the relevant three-pronged test established by the Second Circuit in *Tirado v. Brown*, 842 F.2d 595, 597 (2d Cir. 1988) ("*Tirado*") to determine whether the new evidence, specifically, the Appendix, merits a sentence six remand.  *Id*. at 7-9.

In particular, the Second Circuit instructs that for the court to accept belatedly submitted evidence in support of a sentence six remand, the Plaintiff must show

> That the proffered evidence is (1) 'new' and not merely cumulative of what is already in the record, . . . and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, . . . [and] (3) good cause for her failure to present the evidence earlier.

*Tirado*, 842 F.2d at 597 (internal quotation marks and citations omitted).

Here, it is undisputed that the medical records in the Appendix are both new and relevant to the time period for which Plaintiff was denied disability benefits, yet even assuming, *arguendo*, that Plaintiff has established good cause for failing to present the medical records earlier, the *Tirado* requirements are not met because the records are

not material because they are not probative, *i.e.*, not likely to change the outcome of the Commissioner's Decision. *Tirado*, 842 F.2d at 597 ("The concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently."). Moreover, regardless of whether the medical records in the Appendix are considered, Plaintiff has not shown that a sentence six remand is warranted.

Specifically, the medical records at issue establish that Plaintiff continued to be treated at Dent for headaches and complaints of memory loss, but they fail to establish Plaintiff's symptoms are disabling. The medical records include examinations by PA Case on October 21, 2022, Dkt. 4-2 at 10-13, by Dr. Magun on December 2, 2022, *id*. at 7-9, by Dr. Henry on January 10, 2023, *id*. at 4-6, and by one Ryan C. Bowe, M.D. ("Dr. Bowe") on January 13, 2023. *Id*. at 1-3. On October 21, 2022, PA Case reported Plaintiff was seen in follow-up with complaints of headaches and difficulty concentrating, but Plaintiff reported improved headaches and memory with Topiramate and denied any worsening of memory, concentration, or headaches. *Id*. at 10. On December 2, 2022, Dr. Magun saw Plaintiff in follow-up at which time Plaintiff reported no further improvement since her last visit, but a neurological examination was entirely normal showing, relevantly, normal attention span and concentration, and recent and remote memory were appropriate for her age. *Id*. at 7. Dr. Magun assessed that Plaintiff's history of memory loss was "likely secondary to severe sleep apnea," noting Plaintiff's high BMI and that a loss of 25 pounds would likely improve Plaintiff's OSA as well as her memory, and referred Plaintiff to a weight loss clinic. *Id*. at 8. On January 10, 2023, Plaintiff saw Dr. Henry for complaints of chronic headaches and chronic low back pain

18

radiating into the left lower extremity. *Id*. at 4. Dr. Henry's examination was largely focused on Plaintiff's low back pain with no assessment or further comment on Plaintiff's headaches. *Id*. at 4-6. On January 13, 2023, Plaintiff was evaluated for weight loss treatment by Dr. Bowe who assessed Plaintiff with morbid obesity, BMI between 60.0 and 69.9, chronic lumbar radiculopathy, hypertension, and chronic tension-type headache, not intractable (occurring more than 15 times per month or continuous). AR at 1-3. Dr. Bowe advised that Plaintiff "exercise, and to use stretching and heat therapy daily on the neck and shoulders in order to reduce myalgia [muscle pain] and help prevent tension headaches." *Id*. at 2.

Significantly, consideration of the newly submitted medical records from Dent is not likely to change the outcome of the Commissioner's Decision. *Tirado*, 842 F.2d at 597. Accordingly, Plaintiff's request for a sentence six remand for consideration of the medical records in the Appendix is DENIED.

Here, as noted, *see* Discussion, *supra*, at 8-9, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original). In the instant case, the ALJ's decision that Plaintiff was not disabled between the date of her disability benefits application and the date of the ALJ's decision is supported by substantial evidence in the record, and no remand for consideration of the additional medical records submitted by Plaintiff is warranted.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 4) is DENIED; Defendant's Motion

(Dkt. 6) is GRANTED.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        February 6, 2026
              Buffalo, New York